## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>JAMBYS, INC., ET AL.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-10913 (KBO)<br><br>Jointly Administered |
| JAMBYS, INC., and JAMBYS NYC, INC.,<br>Plaintiffs,<br><br>v.<br><br>VELOCITY CAPITAL GROUP LLC, UNITED FIRST, LLC, GLOBAL FUNDING EXPERTS, LLC, GFE NY LLC, MCA SERVICING COMPANY, CLOUDFUND LLC, DELTA BRIDGE FUNDING, LLC, MAX RECOVERY GROUP LLC, SIMMONS CAPITAL PARTNERS, NEWCO CAPITAL GROUP VI LLC a/k/a NEWCO CAPITAL GROUPS VI, ASSDJS LLC, ASSDJS 2 LLC, JAY AVIGDOR, BORIS MUSHEYEV, VIACHESLAV ELIYAYEV, BARTOSZ MACZUGA, VADIM SEREBRO, and MATT SIMMONS,<br>Defendants. | Chapter 11<br><br>Adv. Pro. No. 24-50065 (KBO)<br><br>**Re: Adv. D.I. 1, 26, 15, 24, 38, 40, 45, & 46**<br><br>**Obj. Deadline: Nov. 4, 2024 at 4:00 p.m. (ET)**<br>**Hearing Date: Nov. 20, 2024 at 10:30 a.m. (ET)** |

## DEBTORS' MOTION PURSUANT TO
## BANKRUPTCY CODE SECTION 105(a) AND BANKRUPTCY RULE 9019 FOR
## ENTRY OF AN ORDER (I) APPROVING THE SETTLEMENT AGREEMENT
## BY AND AMONG THE DEBTORS, THE VELOCITY DEFENDANTS, AND
## THE UNITED FIRST DEFENDANTS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (each, a "Debtor" or collectively

the "Debtors"), by and through their undersigned counsel, hereby file this motion (this "Motion"),

pursuant to sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule

9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Jambys, Inc. (4264) and Jambys NYC, Inc. (5373). The Debtors' mailing address is 228 Park Avenue South, PMB 49630, New York, NY 10003.

order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) approving the terms and conditions of that certain *Settlement Agreement*, dated as of October 16, 2024, attached to the Proposed Order as **Exhibit 1** thereto (the "Settlement Agreement"),[2] by and among (a) the Debtors, (b) Jay Avigdor ("Avigdor") and Velocity Capital Group LLC (with its affiliates, predecessors, successors, and assigns, individually and collectively, "Velocity," and collectively with Avigdor, the "Velocity Defendants"), and (c) United First, LLC ("United First"), Global Funding Experts, LLC ("GFE"), GFE NY LLC ("GFE NY"), Boris Musheyev ("Musheyev"), and Viacheslev Eliyayev ("Eliyayev," and collectively with United First, GFE, GFE NY, and Musheyev, the "United First Defendants," and collectively with the Velocity Defendants and the Debtors, the "Parties," and each a "Party"); and (ii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Settlement Agreement represents a watershed moment in these Chapter 11 Cases as it resolves myriad disputes between the Debtors, the Velocity Defendants, and the United First Defendants, preventing further costly and protracted litigation and allowing the Debtors to expeditiously emerge from chapter 11.  Absent entry into the Settlement Agreement, the Debtors likely could not have obtained confirmation of the Plan in a timely manner, to the detriment of all stakeholders.  Furthermore, in addition to litigating the Plan Objections, the Debtors would be forced to continue dedicating significant resources to prosecute the Adversary Prceeding and challenge the claims asserted by Velocity and United First.  The matters being litigated among the Parties are complex and fact-dependent and involve novel legal issues.  Accordingly, the outcome

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

of the litigation is highly uncertain, and adverse rulings could severely inhibit the Debtors' ability

to continue operating their business.  The certainty provided by the Settlement Agreement and the

money saved by the Debtors in legal fees (and other litigation costs) will maximize value for the

estates and allow for prompt commencement of distributions to creditors under the Plan.

2.      As detailed herein, the Settlement Agreement meets the *Martin* four-factor test, is

in the best interests of the Debtors' estates, and, accordingly, the Motion should be granted.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and

this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

the Debtors consent to entry of a final order with respect to this Motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

5.      The basis for the relief requested herein is section 105(a) of the Bankruptcy Code

and Bankruptcy Rule 9019(a).

## BACKGROUND

**A.      Debtors' Prepetition Financing Arrangements with Velocity and United First**

6.      By agreement dated August 9, 2023 (the "Velocity Agreement"), Velocity agreed

to provide the Debtors with $95,000.00 in funds.  *See* [Adv. D.I. 26-3].[3]  The Velocity Agreement

---

[3]    Citations to "Adv. D.I." refer to filings in the Adversary Proceeding (as defined below) (No. 24-50065).  Citations
      to "D.I." refer to filings in the main bankruptcy case (No. 24-10913).

purportedly provides that in exchange, the Debtors sold to Velocity "future accounts, contract rights and other entitlements arising from or relating to the payment of monies from [the Debtors'] customer's [sic] and/or other third party payors" until the "Purchased Amount" identified in the Velocity Agreement is paid in full (the "Velocity Future Receipts").  [Adv. D.I. 26-3].   The Velocity Agreement expressly states that the Debtors are "selling a portion of a future revenue stream to [Velocity] at a discount, not borrowing money from [Velocity], therefore there is no interest rate or repayment schedule . . . ."  [Adv. D.I. 26-3].  The corporate owners, directors, and officers of the Debtors, John Tate Ambrose and Andrew Lee Goble (the "Jambys Officers"), were also required to provide personal guarantees of the Debtors' performance under the Velocity Agreement (the "Velocity Personal Guarantees").

7.       On March 22, 2024, Velocity filed a complaint against the Debtors, John Tate Ambrose, and Andrew Lee Goble before the Supreme Court of New York (the "Velocity Action"), seeking to enforce the Velocity Agreement.  The Velocity Action remains pending.

8.       By agreement dated August 24, 2023 (the "United First Agreement"), United First agreed to provide the Debtors with $362,000.00 in funds.[4]  In exchange, the Debtors purportedly agreed to sell to United First 11% of all of the Debtors' "future receipts," defined to include "all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card, . . . or other form of monetary payment in the order course of [the Debtors'] business" until the "Purchased Amount of Future Receipts" is paid in full (the "United First Future Receipts" and together with the Velocity Future Receipts, the "Future Receipts").  United First purportedly purchased a total of $440,988.24 of United First Future Receipts from the Debtors pursuant to the

---

[4]     Though the United First Agreement stipulated weekly funding made in 17 installments, it ceased funding after week 14, and ultimately provided only $315,223.90 to Jambys under the United First Agreement.  [Adv. D.I. 26 ¶ 89]

United First Agreement.  [D.I. 52-1 ¶ 2].  The United First Agreement states that upon the sale of the United First Future Receipts, the Debtors transferred to United First "full and complete ownership of the Purchased Amount of Future Receipts" and "retain[ed] no legal or equitable interest therein."  *See* [D.I. 52-1 ¶ 3].  John Tate Ambrose and Andrew Lee Goble were required to provide personal guarantees of the Debtors' performance under the United First Agreement (the "United First Personal Guarantees"), or otherwise be held liable in full.  *See* [D.I. 52-1 ¶ 17]; [D.I. 94-1 ¶ 3.2]; [Adv. D.I. 26-3 ¶ 3.2].

**B.      The Chapter 11 Cases and the Adversary Proceeding**

9.      On April 30, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief commencing cases (the "Chapter 11 Cases," and each a "Chapter 11 Case") under subchapter V of Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

10.      On May 9, 2024, the Debtors filed a *Verified Complaint for Injunctive Relief* [Adv. D.I. 1] (the "Initial Complaint"), and on June 4, 2024, the Debtors filed a *First Amended Verified Complaint for Injunctive Relief* [Adv. D.I. 26] (the "Amended Complaint"), Case No. 24-50065 (KBO) (the "Adversary Proceeding" or "Adv. D.I."), which, in relevant part, (1) sought preliminary and permanent injunctive relief against Velocity, United First, and other defendants from enforcing the Velocity Agreement and the United First Agreement; (2) asserted that the Velocity Agreement and United First Agreement were void and unenforceable for violation of New York's criminal usury statute; (3) challenged the validity and priority of Velocity's and United First's claims against the Debtors and any liens related thereto; (4) sought recovery of purported preferential transfers and fraudulent conveyances made to Velocity and United First;

and (5) asserted civil RICO violations against the Velocity Defendants and the United First Defendants for conducting an enterprise for the purpose of collecting unlawful debts.

11.    On July 1, 2024, United First filed a Proof of Claim in the main bankruptcy proceedings, alleging that it holds a secured claim in an amount of $171,276.09 pursuant to the United First Agreement (the "United First Claim"). [P.O.C. 18]. On the same day, Velocity also filed a Proof of Claim in the main bankruptcy proceedings, alleging it holds a secured claim in an amount of $25,921.00 pursuant to the Velocity Agreement (the "Velocity Claim" and together with the United First Claim, the "Asserted Claims"). [P.O.C. 19].

12.    On May 10, 2024, the Bankruptcy Court entered a Temporary Restraining Order [Adv. D.I. 15] (the "TRO") and further entered an order granting preliminary injunctive relief on May 23, 2024 [Adv. D.I. 24] (the "P.I. Order"), which extends the protection of the automatic stay to John Tate Ambrose and Andrew Lee Goble, and restrains Velocity, United First, and any other defendant named in the Adversary Proceeding from seeking to prosecute certain claims against either the Debtors, John Tate Ambrose, or Andrew Lee Goble pending either final resolution of the Adversary Proceeding or the effective date of a plan of reorganization confirmed in the Bankruptcy Case, whichever comes later.

13.    The Velocity Defendants dispute the allegations asserted by the Debtors in the Adversary Proceeding and have filed a *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) and (6)* on August 2, 2024 [Adv. D.I. 40] (the "Velocity MTD"), while the United First Defendants have filed their own *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6)* on August 2, 2024 [Adv. D.I. 38] (the "United First MTD," and collectively with the Velocity MTD, the "Motions to Dismiss").

14.     The Debtors timely filed an omnibus brief in opposition to the Motions to Dismiss on August 16, 2024 [Adv. D.I. 45] (the "Opposition to the Motion to Dismiss"), and the Velocity Defendants and United Defendants jointly filed a reply in support of the Motions to Dismiss on August 23, 2024 [Adv. D.I. 46] (the "MTD Reply").  The Motions to Dismiss currently remain outstanding, pending further determination from the Bankruptcy Court.

**C.      The Debtors' Subchapter V Plan**

15.     On July 29, 2024, the Debtors filed their *Subchapter V Debtors' Plan of Reorganization* [D.I. 121].

16.     On September 3, 2024, Velocity and United First filed a joint *Objection to Confirmation of Subchapter V Debtors' Plan of Reorganization* [D.I. 137] (the "Joint Plan Objection").

17.     On September 6, 2024, the Debtors filed the *Subchapter V Debtors' First Amended Plan of Reorganization* [D.I. 138] (the "Plan") and a *Brief in Support of Confirmation of Subchapter V Debtors' First Amended Plan of Reorganization* [D.I. 142] (the "Confirmation Brief").

18.     On September 9, 2024, United First filed the *Objection of United First, LLC to Subchapter V Debtors' First Amended Plan of Reorganization* [D.I. 148] (the "Supplemental Objection" and together with the Joint Plan Objection, the "Plan Objections").

19.     Velocity and United First have since withdrawn their Plan Objections in connection with their entry into the Settlement Agreement.

20.     On September 12, 2024, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Subchapter V Debtors' Plan of Reorganization* [D.I. 156] (the "Confirmation Order").

**D.     The Settlement Agreement**

21.     Following good faith and arm's-length negotiations and discussions regarding the Asserted Claims, the Plan Objections, and the Adversary Proceeding, and after a review and analysis of the positions and/or defenses set forth by each Party, the Parties, in consultation with their respective professionals, have determined that a settlement, consistent with the terms set forth in the Settlement Agreement, is appropriate and prudent.  As such, and as discussed in more detail below, the Parties, through the Settlement Agreement, if approved, will save the estates the expense of litigating disputes related to the Asserted Claims and the Adversary Proceeding, and will allow the Debtors to expeditiously emerge from bankruptcy.

22.     The salient terms of the Settlement Agreement are set forth below:[5]

- The Reorganized Debtors shall pay to United First a total of $66,000.00, to be paid in equal installments of $22,000.00 on January 1, 2025, February 1, 2025, and March 1, 2025 (the "United First Installments").  The United First Installments were included in an exhibit to the Confirmation Order as a "Litigation Settlement," and such payments are obligations under the Plan and the Settlement Agreement. The Reorganized Debtors shall also have five business days from any notice of default sent in accordance with the Settlement Agreement's notice provisions to cure any default.  Pending timely remittance of the United First Installments, United First shall not pursue any claims whatsoever against the Debtors, John Tate Ambrose, or Andrew Lee Goble.

- The Adversary Proceeding shall be fully resolved as to the Velocity Defendants and the United First Defendants.  Within one (1) week of entry of the Proposed Order, the Reorganized Debtors shall dismiss the Velocity Defendants and the United First Defendants from the Adversary Proceeding, the P.I. Order, and the TRO with prejudice.

- Within one (1) week of entry of the Proposed Order, Velocity shall:  (a) withdraw any and all proofs of claim filed by it in the Bankruptcy Case; (b) withdraw the Velocity MTD; (c) take all actions necessary to discharge all UCC-1 financing statements and/or any other liens asserted by it against the Debtors, John Tate Ambrose, and/or Andrew Lee Goble, and (d) dismiss the state court Velocity Action with prejudice.

---

[5]   The summary set forth herein is provided for reference and convenience only, and is qualified and supplemented by the provisions of the Settlement Agreement attached as **Exhibit 1** to the Proposed Order.

- Within one (1) week of entry of the Proposed Order, United First shall: (a) withdraw any and all proofs of claim filed by it in the Bankruptcy Case; (b) withdraw the United First MTD; and (c) take all actions necessary to discharge all UCC-1 financing statements and/or any other liens asserted by it against the Debtors, John Tate Ambrose, and/or Andrew Lee Goble.

- The Debtors or Reorganized Debtors, as applicable, shall forever release and discharge the Velocity Defendants and the United First Defendants, and any and all of their affiliates, agents, employees, professionals, predecessors and successors (collectively, the "MCA Released Parties") from any and all causes of action, claims, actions, rights, judgments, obligations, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which the Debtors or Reorganized Debtors, as applicable, have or may have against any of them from the beginning of time through the Effective Date of the Settlement Agreement, including any claims that could have been brought under the Bankruptcy Code, but excluding claims arising out of the Settlement Agreement.

- Velocity shall forever release and forever discharge the Debtors, John Tate Ambrose, Andrew Lee Goble, the Debtors' professionals, and any and all of their affiliates, agents, employees, professionals, predecessors, and successors (collectively, the "Jambys Released Parties") from any and all causes of action, claims, actions, rights, judgments, obligations, guarantees, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which Velocity has or may have against any of them from the beginning of time through the Effective Date of the Settlement Agreement relating to the Velocity Agreement, the Velocity Personal Guarantees, the Velocity Action, the Velocity Claim, the Debtors' Chapter 11 Cases, and/or the Adversary Proceeding, including any claims that could have been brought under the Bankruptcy Code, but excluding claims arising out of the Settlement Agreement.

- United First shall forever release and forever discharge the Jambys Released Parties from any and all causes of action, claims, actions, rights, judgments, obligations, guarantees, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which United First has or may have against any of them from the beginning of time through the Effective Date of the Settlement Agreement relating to the United First Agreement, the United First Personal Guarantees, the United First Claim, the Debtors' Chapter 11 Cases, and/or the Adversary Proceeding, including any claims that could have been brought under the United States Bankruptcy Code, but excluding claims arising out of the Settlement Agreement.  This release shall take immediate and automatic effect upon full payment of the last of the United First Installments, and is not contingent upon any further action by United First.

- The effective date of the Plan shall occur immediately upon the Parties Effective Date, subject to any other conditions precedent set forth in the Plan or the

Confirmation Order.

23.     The Parties executed the Settlement Agreement on October 16, 2024.

## RELIEF REQUESTED

24.     By this Motion, the Debtors request, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the terms and conditions of the Settlement Agreement; and (ii) granting related relief.

## BASIS FOR RELIEF REQUESTED

### I.      The Settlement Agreement Satisfies the Standard for Approval Pursuant to Bankruptcy Rule 9019.

25.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

26.     In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), the Third Circuit requires a bankruptcy court to "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]."  *In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1146 (3d Cir. 1979).  A court generally gives deference to a debtor's business judgment in deciding whether to settle a matter.  *See In re Key3Media Group, Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005).

27.     The approval of a settlement under Bankruptcy Rule 9019 is within the sound discretion of the bankruptcy court.  *In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996).  The Court, however, need not substitute its judgment for that of the Parties.  *See In re Neshaminy Office Bldg. Assoc's*, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986).  The Court does not have to be convinced that

the settlement is the best possible compromise, but only that the settlement "falls below the lowest point in the range of reasonableness." *In re Penn. Truck Lines, Inc*., 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993) (holding that to approve a compromise or settlement pursuant to Bankruptcy Rule 9019, the court must conclude that the compromise or settlement falls above the lowest point in the range of reasonableness).

28.    The Third Circuit has enumerated four factors that should be considered in determining whether a settlement should be approved:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin,* 91 F.3d at 393 (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *Neshaminy Office Bldg. Assocs*., 62 B.R. at 803).  Consideration of these factors requires the Court to make an objective, informed comparison of the results of litigation versus the benefits of compromise.  *See TMT Trailer*, 390 U.S. at 424.

29.    **Probability of Success of Litigation.**  The first factor is satisfied here because, in the absence of the Settlement Agreement, the Parties would need to litigate the Adversary Proceeding, the Plan Objections, and other disputes relating to the Asserted Claims.  While the Parties each believe that their respective position is valid with respect to these disputes, there is no guarantee of a successful outcome for either Party.  Specifically, the Adversary Proceeding revolves around rarely-litigated issues under the Uniform Commercial Code which are potentially highly factual, and therefore a favorable result for the Debtors may be difficult (and expensive) to obtain.  Indeed, absent settlement, Velocity and United First intended to vigorously dispute the Debtors' claims and support their respective positions as to the priority, validity, and extent of

their asserted ownership interests in the Future Receipts.  If the Settlement Agreement is not approved, the Parties will be forced to expend additional resources in the form of attorneys' fees and costs litigating the Adversary Proceeding, the Plan Objections, and, depending on the outcome of the Adversary Proceeding, the validity of the Asserted Claims, with no guarantee of a successful outcome.  These are additional resources that the Debtors quite simply do not have.

30. **Difficulties in Collection.**  The second criterion favors approval of the Settlement Agreement.  Even if the Debtors were to succeed in the Adversary Proceeding, recovery on their litigation claims would remain uncertain given the time and cost of any litigation.  Approval of the Settlement Agreement eliminates this uncertainty.

31. **The Complexity of Litigation Involved.**  The third criterion strongly favors approval of the Settlement Agreement.  The Parties, in consultation with their professionals, have determined that entry into the Settlement Agreement will save the significant time and expense associated with the Parties' various disputes, which could include lengthy and complex evidentiary hearings as well as a lengthy and complex claims resolution.  The Parties largely disagree on whether the Agreements provide for true sales or disguised loans, and those disputes may be both factually intensive and require the resolution of complex legal issues.  Thus, the Debtors submit that the complexity-and-expense factor weighs in favor of approving the Settlement Agreement.

32. **Paramount Interest to Creditors**.  The fourth and final factor is also satisfied and is the most prevalent in this instance.  The Settlement Agreement is in the best interests of the Debtors' creditors because, without the Settlement Agreement, the Debtors' emergence from bankruptcy (and consequently, creditor distributions) would be significantly delayed and potentially reduced, particularly given that litigation-related expenses would be entitled to administrative expense status.

33.     Accordingly, the Debtors respectfully submit that consideration of the factors set forth above dictates that the Settlement Agreement satisfies the Third Circuit's requirements under Bankruptcy Rule 9019 in all respects, is a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors' estates.

**II.     Request for Waiver of Stay**

34.     The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. Bank. R. Pro. 6004(h).  As set forth above, the Settlement Agreement allows the Plan to be confirmed and for distributions to creditors to commence promptly and will prevent the Debtors from expending substantial costs and resources on protracted litigation.  No need exists to delay consummation of that outcome, which is in the best interest of the Debtors, their estates, and their creditors.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

**NOTICE**

35.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel: (i) the Office of the U.S. Trustee; (ii) the Subchapter V Trustee; (iii) the Velocity Defendants; (iv) the United First Defendants; (v) the Debtors' creditor matrix; and (vi) those parties requesting notice pursuant to Rule 2002.

*[Concluded on Following Page]*

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that this Court (i) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: October 21, 2024
    Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Joseph C. Barsalona II*
Joseph C. Barsalona II (No. 6102)
824 North Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 592-6496
Email: jbarsalona@pashmanstein.com

-and-

Amy M. Oden (admitted *pro hac vice*)
Katherine R. Beilin (admitted *pro hac vice*)
Court Plaza South, East Wing
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200
Email: aoden@pashmanstein.com
    kbeilin@pashmanstein.com

*Counsel to the Debtors and
Debtors in Possession*